UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

In re
Glen D. Willems and
Leslie A. Willems,
         Debtors.

Chapter 13
Case No. 10-38561-svk

**DECISION AND ORDER ON TRUSTEE'S OBJECTION TO CONFIRMATION**

The sole issue is whether the Supreme Court's recent decision in *Ransom v. FIA Card Services*, 2011 U.S. LEXIS 608 (Jan. 11, 2011), applies retroactively to unconfirmed Chapter 13 plans filed prior to the decision.

In *Ransom*, the Supreme Court considered whether, in calculating disposable income, a Chapter 13 debtor must have a loan or a lease payment on the date of the petition to deduct a vehicle ownership expense. *Id.* (construing 11 U.S.C. § 707(b)(2)(A)(ii)(I)). Affirming the Court of Appeals for the Ninth Circuit, and rejecting the contrary interpretation that had been adopted by three other Circuit Courts, including the Seventh Circuit in *In re Ross-Tousey*, 549 F.3d 1148 (7th Cir. 2008), the Court held that the text, context, and purpose of the statutory provision governing the deduction precludes a debtor who owns a vehicle without a lien from claiming the vehicle ownership deduction. *Ransom*, 2011 U.S. LEXIS 608. The decision was handed down January 11, 2011.

Meanwhile, Glen and Leslie Willems (the "Debtors") filed a Chapter 13 petition and plan on November 19, 2010. Their annualized current monthly income exceeds the median for their household size in the state of Wisconsin, and under Bankruptcy Code § 1325(b)(3), their reasonably necessary expenses are governed by § 707(b)(2)(A) and (B). The Debtors own a 2008 Nissan Quest that is subject to a lien held by Shoreline Credit Union, and a 2004 Chevrolet

Cavalier, that is not subject to any lien. In reliance on *Ross-Tousey*, the Debtors claimed an ownership expense deduction of $496 for the Cavalier when computing their disposable income. After deducting the rest of the allowable expenses from their current monthly income, the Debtors claimed to have disposable income of $304.58 per month. To comply with the requirements of § 1325(b)(1)(B), the Debtors' plan offered $305 per month to the Debtors' unsecured creditors. The § 341 meeting of creditors was held and concluded on January 6, 2011. Objections to confirmation were due within 10 days of the conclusion of the meeting of creditors. On January 12, 2011, a day after the Court decided *Ransom*, the Trustee objected to confirmation of the Debtors' plan. The Trustee contended that the $496 ownership deduction on the Cavalier is impermissible, and that the plan does not provide the requisite amount for the unsecured creditors. The Debtors argue that because they filed their case and their plan before the issuance of the *Ransom* decision, and the Supreme Court did not indicate that the decision should be applied retroactively, their plan may be confirmed in spite of the discredited deduction. The Debtors are mistaken.

*Ransom* announces the Supreme Court's construction of the ownership expense deduction under the Bankruptcy Code. 2011 U.S. LEXIS 608. This Court, therefore, is duty-bound to apply the rule stated in *Ransom* to this case and all cases in which the plan has not yet been confirmed. *See Rivers v. Roadway Express,* 511 U.S. 298 (1994). The Supreme Court itself provided clear guidance on retroactive application in *Rivers*, when the Court admonished:

> It is this Court's responsibility to say what a statute means, and once the Court has spoken, it is the duty of other courts to respect that understanding of the governing rule of law. A judicial construction of a statute is an authoritative statement of what the statute meant *before* as well as after the decision of the case giving rise to that construction.

*Id.* at 312-13 (emphasis supplied).

Lower courts considering the retroactive application of recent Supreme Court decisions to pending bankruptcy cases instruct that if the Supreme Court applied the "new" rule to the pending case before it, other courts must apply that rule to all pending cases, unless barred by res judicata or procedural requirements.  *See, e.g.*, *Ditto v. McCurdy*, 510 F.3d 1070 (9th Cir. 2007); *In re Hornes*, 160 B.R. 709 (Bankr. D. Conn. 1993).

In *Hornes,* the bankruptcy court confronted a virtually identical issue in the wake of the Supreme Court's decision in *Nobelman v. American Savings Bank*, 508 U.S. 324 (1993).  The question in *Nobelman* was whether the bankruptcy court could confirm a Chapter 13 plan that bifurcated a home mortgage claim into secured and unsecured portions.  508 U.S. at 325-26.  Four Circuits had held that § 1322(b)(2) allowed the bifurcation of undersecured home mortgages, including the Second Circuit.  *Id.* at 327, n.2.  The Supreme Court disagreed in *Nobelman*, holding that the bifurcation of a claim secured only by a lien on the debtor's principal residence violated the anti-modification provision of § 1322(b)(2).  *Id.* at 332.  The *Nobelman* decision was issued on June 1, 1993, but on May 7, 1993, the *Hornes* debtors had filed a motion to determine that claims in excess of the value of their residence were unsecured claims within the meaning of § 506(a), and could be treated as unsecured claims in their Chapter 13 plan.  *In re Hornes,* 160 B.R. at 710.  The bankruptcy court applied *Nobelman*, stating:  "[B]ecause the Supreme Court applied its holding in *Nobelman* to the litigants in that case, this court must apply *Nobelman* to this case in which a confirmation order has not entered, notwithstanding the fact that this case and the instant motion were filed before *Nobelman* was decided."  *Id.*  *Hornes* relied on *Harper v. Virginia Department of Taxation*, in which the Supreme Court clarified the doctrine of retroactive application:

3

> When this Court applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate our announcement of the rule.

509 U.S. 86, 97 (1993) (citing *James B. Beam Distilling Co. v. Georgia*, 501 U.S. 529, 544 (1991) ("When the Court has applied a rule of law to the litigants in one case it must do so with respect to all others not barred by procedural requirements or res judicata.")). *See also Independence One Mortgage Corp. v. Wicks (In re Wicks)*, 5 F.3d 1372 (10th Cir. 1993) (stating that since the Supreme Court applied the holding of *Nobelman* to the facts of that case, *Nobelman* applied to this factually indistinguishable case and effectively foreclosed debtors' argument with respect to bifurcation). *Hornes* held that a Supreme Court decision applied retroactively to a plan that had been filed, but not confirmed, when the decision was issued. 160 B.R. at 710.

The result was the same in the aptly named *Ditto,* involving the Supreme Court's ruling in *Kawaauhau v. Geiger*, 523 U.S. 57 (1998). In *Ditto*, an individual sued a plastic surgeon for medical malpractice and fraud for failing to disclose his lack of credentials. 510 F.3d at 1074. She obtained a state court judgment for over $2 million, and the surgeon filed an appeal in the state court and a Chapter 7 bankruptcy. *Id.* In 1993, the creditor filed a nondischargeability complaint, claiming willful and malicious injury under Bankruptcy Code § 523(a)(6), and in 1996, the bankruptcy court granted summary judgment in favor of the creditor, using the standard for willful and malicious injury in effect in the Ninth Circuit at that time. *Id.* at 1074-75. Meanwhile, the state supreme court reversed the underlying malpractice judgment with respect to fraud, and the debtor filed a Rule 60(b) motion to vacate the judgment of nondischargeability. *Id.* at 1075. Although the bankruptcy court and district court denied the

4

motion, the court of appeals reversed, and ordered the bankruptcy court to vacate the judgment. *Id.* In the intervening time between the filing and granting of the Rule 60(b) motion, the Supreme Court decided *Geiger*, holding that a malpractice claim did not fall within the definition of willful and malicious under 11 U.S.C. § 523(a)(6). *Id.* The creditor argued that the standard announced in *Geiger*, decided well after her judgment became final, should not be applied retroactively, but the Ninth Circuit Court of Appeals rejected the argument, noting the "general rule" that when the Supreme Court applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law, and must be given retroactive effect in all cases still open on direct review. *Id.* at 1076. Even the pre-*Geiger* final judgment did not save the day in *Ditto*, because when the judgment was set aside pursuant to Rule 60(b), the effect was as if the judgment had never occurred in the first place. *Id.* at 1076-77. Therefore, the *Geiger* standard for determining a willful and malicious injury controlled. *Id.* at 1077.

*Hornes* and *Ditto* exemplify the retroactive application of Supreme Court decisions to pending bankruptcy cases. Accordingly, because the Supreme Court applied its interpretation of the ownership expense deduction to the parties in *Ransom*, this Court is obliged to apply the rule announced in *Ransom* to this case and all cases in which the plan has not yet been confirmed. Res judicata would prevent the application of the decision to cases with confirmed plans, but if an Order confirming a plan is set aside under Rule 60(b), the *Ransom* rule will apply to the calculation of the above-median debtor's disposable income.

After application of the rule announced in *Ransom*, without the deduction of the $496 ownership expense for the Cavalier, the Debtors clearly are not dedicating sufficient disposable income to the plan. The Trustee's Objection to confirmation must be sustained.

5

IT IS THEREFORE ORDERED:  Confirmation of the Debtors' plan is denied, and the Debtors shall have until March 3, 2011 to file a modified plan, or this case will be dismissed.

Dated: February 3, 2011

By the Court:

Susan V. Kelley
U.S. Bankruptcy Judge

6